1

2

3

4                          UNITED STATES DISTRICT COURT

5                        NORTHERN DISTRICT OF CALIFORNIA

6                                SAN JOSE DIVISION

7

8   VINCENT FERRANTI, individually and on          Case No.   5:13-cv-03847-EJD
    behalf of all others similarly situated,

9                   Plaintiff,                     **ORDER GRANTING DEFENDANT'S
                                                   MOTION TO DISMISS**
10          v.
                                                   Re: Dkt. No. 45
11  HEWLETT-PACKARD COMPANY,

12                  Defendant.

13          Plaintiffs Vincent Ferranti ("Mr. Ferranti") and Carlos Martinho ("Mr. Martinho")

14  (collectively, "Plaintiffs") filed the instant consumer class action suit against Defendant Hewlett-

15  Packard Co. ("HP") alleging fraud-related claims for the sale of defective wireless printers.

16          Federal jurisdiction arises pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d).

17  Presently before the Court is HP's Motion to Dismiss Plaintiffs' Second Amended Complaint

18  ("SAC") pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6).  See Dkt. No. 45.  The

19  court found this matter suitable for decision without oral argument pursuant to Civil Local Rule 7–

20  1(b) and previously vacated the associated hearing date.  Having carefully reviewed the parties'

21  briefing, the court will grant HP's motion to dismiss for the reasons explained below.

22  **I.    BACKGROUND**

23          Mr. Ferranti, a resident of Arizona, and Mr. Martinho, a resident of Pennsylvania, are

24  former owners of a HP Officejet Pro 8500 and/or 8600 Wireless All-in-One printer (the "HP

25  wireless printers").  SAC, Dkt. No. 44 at ¶¶ 1, 10-11.  The wireless function allows a computer to

26  wirelessly send print jobs to the printer.  Id. at ¶ 2.  Plaintiffs bring forth this action on behalf of all

27  individuals who purchased or leased a HP wireless printer, alleging that the printers contain a

28
                                                    1
    Case No.: 5:13-cv-03847-EJD
    ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

United States District Court
Northern District of California

1   design and/or manufacturing defect because the transceivers are unable to maintain wireless

2   communication with the computer, and are thus unable to print using the wireless function.  Id. at

3   ¶¶ 1, 4.

4        According to Plaintiffs, since April 2009, HP has been marketing and selling the HP

5   wireless printers even while knowing of the alleged defect.  Id. at ¶ 7.  Customers have allegedly

6   reported the defect directly to HP and have posted about the problem in HP's support forum and

7   other product-review websites.  Id. at ¶¶ 19, 23-32.  Instead of repairing the HP wireless printers,

8   however, Plaintiffs allege that HP falsely represented it could fix the problem by directing

9   customers through troubleshooting procedures, which include uninstalling and reinstalling

10  software, downloading and installing firmware updates or patches, restarting the computer,

11  restarting the wireless router, restarting the printer, downloading and installing HP diagnostic tools

12  to help identify and fix issues, inputting wireless router settings into the LCD panel on the printer,

13  disabling "energy save mode" on printer, and changing the setup of the standard IP address.  Id. at

14  ¶¶ 8, 19-20.  Plaintiffs allege that HP knew the troubleshooting procedures would not work

15  because the wireless connectivity problem was caused by a hardware defect in the transceiver that

16  could not be fixed without physically replacing or repairing the transceiver, and HP has allegedly

17  failed to disclose the nature of the defect to its customers.  Id. at ¶¶ 19, 39.

18       Plaintiffs further allege that the HP wireless printers come with a limited warranty, which

19  covers HP wireless printers for one year from the date of purchase or from the date of the warranty

20  replacement.  Id. at ¶¶ 34-35.  The warranty covers defects that arise as a result of normal use of

21  the product, and provides that HP will repair or replace the product, or refund the purchase price.

22  Id. at ¶¶ 34, 36.  According to Plaintiffs, however, HP has refused to properly repair the HP

23  wireless printers, to replace the defective HP wireless printer with a non-defective printer, or to

24  refund the purchase price.  Id. at ¶ 37.

25       Plaintiffs commenced the instant action in August 2013.  See Dkt. No. 1.  In November

26  2013, Plaintiffs filed their first amended class action complaint alleging fraud-related claims.  See

27  Dkt. No. 16.  Thereafter, the case was reassigned to the undersigned judge, and HP filed its motion

28

United States District Court
Northern District of California

2

Case No.: 5:13-cv-03847-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

1    to dismiss Plaintiffs' first amended complaint.  See Dkt. Nos. 37, 39.  This court granted HP's

2    motion to dismiss ruling that Plaintiffs' Consumers Legal Remedies Act ("CLRA"), Cal. Civ.

3    Code § 1750 et seq.,  claims were barred by the statute of limitations, Mr. Ferranti's unfair

4    competition law ("UCL"), Cal. Bus. & Prof. Code § 17200 et seq., claim was barred by the statute

5    of limitations, Mr. Martinho's UCL claim was insufficiently pled, and Plaintiffs' breach-of-

6    warranty claims were also insufficiently pled.  See Order, Dkt. No. 43 at 7-11.  Plaintiffs were

7    granted leave to amend to address the deficiencies identified by this court.  See id. at 11.

8           Plaintiffs subsequently filed their second amended class action complaint, which is the

9    operative complaint.  See SAC, Dkt. No. 44.  Therein, Plaintiffs allege the following claims: (1)

10   violation of the CLRA, (2) unlawful, unfair, and fraudulent business practices under California's

11   UCL, (3) breach of express warranty under the Magnuson-Moss Warranty Act ("MMWA"), 15

12   U.S.C. § 2301 et seq., (4) breach of express warranty, (5) in the alternative, by Mr. Ferranti on

13   behalf of the Arizona subclass, violation of the Arizona Consumer Fraud Act, A.R.S. § 44-1522,

14   and (6) in the alternative, by Mr. Martinho on behalf of the New York subclass, violation of the

15   New York General Business Law § 349.  See id.  Plaintiffs seek damages for financial losses

16   associated with their purchase and/or lease of a defective HP wireless printer that include repair

17   costs, shipping charges, loss of use, diminished value, and seek punitive damages and attorneys'

18   fees.  See id. at ¶¶ 130-31.  HP filed the instant motion to dismiss in October 2014.  See Mot., Dkt.

19   No. 45.  The matter has been fully briefed.  See Opp'n, Dkt. No. 48; Reply, Dkt. No. 49.

20   **II.    LEGAL STANDARD**

21          Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim with sufficient

22   specificity to "give the defendant fair notice of what the . . . claim is and the grounds upon which

23   it rests."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotations omitted).  A

24   complaint which falls short of the Rule 8(a) standard may be dismissed if it fails to state a claim

25   upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  "Dismissal under Rule 12(b)(6) is

26   appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support

27   a cognizable legal theory."  Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th

United States District Court
Northern District of California

28
Case No.: 5:13-cv-03847-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

1    Cir. 2008).  Moreover, the factual allegations "must be enough to raise a right to relief above the

2    speculative level" such that the claim "is plausible on its face."  Twombly, 550 U.S. at 556-57.

3         Fraud requires more detail.  "In alleging fraud or mistake, a party must state with

4    particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  These

5    allegations must be "specific enough to give defendants notice of the particular misconduct which

6    is alleged to constitute the fraud charged so that they can defend against the charge and not just

7    deny that they have done anything wrong."  Semegen v. Weidner, 780 F.2d 727, 731 (9th Cir.

8    1985).  To that end, the allegations must contain "an account of the time, place, and specific

9    content of the false representations as well as the identities of the parties to the

10   misrepresentations."  Swartz v. KPMG LLP, 476 F.3d 756, 764 (9th Cir. 2007).  In other words,

11   claims of fraudulent conduct must generally contain more specific facts than is necessary to

12   support other causes of action.

13        The court must generally accept as true all "well-pleaded factual allegations."  Ashcroft v.

14   Iqbal, 556 U.S. 662, 664 (2009).  The court must also construe the alleged facts in the light most

15   favorable to the plaintiff, but "are not bound to accept as true a legal conclusion couched as a

16   factual allegation."  Love v. United States, 915 F.2d 1242, 1245 (9th Cir. 1988).

17   **III.   DISCUSSION**

18        HP moves to dismiss Plaintiffs' claims on the grounds that each of the claims is barred by

19   the statute of limitations and are insufficiently pled.  The timeliness and sufficiency of the

20   pleadings of each claim will be evaluated.

21        **A.    Consumers Legal Remedies Act**

22        Ordinarily plaintiffs "need not plead on the subject of an anticipated affirmative defense."

23   Rivera v. Peri & Sons Farms, Inc., 735 F.3d 892, 902 (9th Cir. 2013) (internal quotations omitted).

24   "When an affirmative defense is obvious on the face of a complaint, however, a defendant can

25   raise that defense in a motion to dismiss."  Id.  Thus, the district court can address the statute of

26   limitations issues if they are apparent on the face of the complaint.  Id.

27

28
Case No.: 5:13-cv-03847-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

United States District Court
Northern District of California

United States District Court
Northern District of California

1    In California, the statute of limitations begins to run at the moment a claim accrues.  Aryeh

2    v. Canon Bus. Sol., Inc., 55 Cal. 4th 1185, 1191 (2013).  "This is the 'last element' accrual rule:

3    ordinarily, the statute of limitations runs from the occurrence of the last element essential to the

4    cause of action."  Id. (internal quotations omitted).  An exception to this rule is the discovery rule,

5    which "postpones accrual of a cause of action until the plaintiff discovers, or has reason to

6    discover, the cause of action."  Id. at 1192.  A plaintiff discovers the cause of action "when he at

7    least suspects that someone has done something wrong to him."  Rosas v. BASF Corp., 236 Cal.

8    App. 4th 1378, 1389 (2015).  "The discovery rule only delays accrual until the plaintiff has, or

9    should have, inquiry notice of the cause of action," thus "plaintiffs are charged with presumptive

10   knowledge of an injury if they have information of circumstances to put them on inquiry or if they

11   have the opportunity to obtain knowledge from sources open to their investigation."  Id. (emphasis

12   omitted).  To invoke the discovery rule, "the plaintiff must specifically plead facts which show (1)

13   the time and manner of discovery and (2) the inability to have made earlier discovery despite

14   reasonable diligence."  Yumul v. Smart Balance, Inc., 733 F. Supp. 2d 1134, 1141 (C.D. Cal.

15   2010).

16   While HP contends that Plaintiffs' CLRA claims are time-barred, Plaintiffs argue that the

17   claims are timely under the discovery rule.  Mot. at 6; Opp'n at 13-15.  The CLRA prohibits

18   certain "unfair methods of competition and unfair or deceptive acts or practices undertaken by any

19   person in a transaction intended to result or which results in the sale or lease of goods or services

20   to any consumer."  Cal. Civ. Code § 1770(a).  The statute of limitations for a CLRA claim is

21   "three years from the date of the commission of such method, act, or practice."  Id. at § 1783.

22   As to Mr. Ferranti's claim, he alleges that he obtained a HP wireless printer as a warranty

23   replacement on March 25, 2009.  SAC at ¶ 40.  He soon noticed that the printer's wireless function

24   did not work, thus he exchanged the printer for another HP wireless printer of the same model on

25   September 27, 2009.  Id. at ¶¶ 41-42.  The second printer was also defective.  Id. at ¶ 42.  Between

26   April 2010 and May 2013, Mr. Ferranti alleges that he contacted HP via its tech support

27   department to request a repair or replacement, but each time HP only offered troubleshooting

28
5
Case No.: 5:13-cv-03847-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

1    assistance while allegedly knowing that it would not fix the problem.  Id. at ¶¶ 45-46.  Mr. Ferranti

2    further alleges that it was not until August 20, 2010 when he discovered the problem was caused

3    by a hardware defect that could not be resolved with troubleshooting procedures.  Id. at ¶¶ 50-52.

4         Taking into account the discovery rule, the earliest the limitations period could have begun

5    to run was March 2009 when Mr. Ferranti realized that his warranty replacement printer was

6    defective, and the latest that it could have begun to run is September 2009 when he realized that

7    the second printer suffered from the same alleged defect.  Noting that both printers[1] suffered from

8    the same alleged defect and each time Mr. Ferranti called HP's customer service he received the

9    same troubleshooting response, this is sufficient to constitute inquiry notice that there was

10   something wrong.  Moreover, in their complaint, Plaintiffs include eleven pages of comments

11   posted on product-review websites dating as early as April 2009 in which consumers complain

12   about the dysfunctional wireless feature and the lack of resolution offered by HP, serving as a

13   further basis for inquiry notice.  See SAC at ¶¶ 24-32; see also Clemens v. DaimlerChrysler Corp.,

14   534 F.3d 1017, 1024-25 (9th Cir. 2008) (finding that performing research on the internet, learning

15   the defect was a common problem, and requesting repair discounts was sufficient inquiry notice).

16   Collectively, the facts alleged show that the latest Mr. Ferranti could have discovered the existence

17   of a CLRA claim is September 2009.  Since this action was filed in August 2013 and the CLRA

18   statute of limitations is three years, Mr. Ferranti's CLRA claim is untimely.

19        As to Mr. Martinho's claim, he alleges that he purchased a HP wireless printer on

20   December 22, 2009.  Id. at ¶ 55.  He alleges that as soon as he installed the printer, he realized that

21   he could not establish a useable wireless connection, thus he exchanged the printer for another HP

22   wireless printer of the same model on December 28, 2009.  Id. at ¶¶ 55-56.  After only one day of

23   using the printer, he allegedly realized that the second printer was also defective.  Id. at ¶ 56.  Mr.

24   Martinho further alleges that beginning in December 23, 2009, he called HP customer support on

25

26   ───────────────────────

27   [1] Since the printer obtained in March 2009 was a warranty replacement printer, it is presumed that
     Mr. Ferranti had problems with at least three different printers.  It is unknown, however, whether
     the original printer suffered from the same alleged defect.

28   United States District Court
     Northern District of California

6

Case No.: 5:13-cv-03847-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

1    various occasions and was instructed to install software patches, none of which fixed the defect.

2    Id. at ¶ 57. Mr. Martinho thereafter purchased a third HP wireless printer on January 19, 2010,

3    and after using it for one week, he realized that printer was also defective. Id. at ¶ 58. Mr.

4    Martinho alleges that it was not until November 8, 2010 when he discovered the problem was a

5    hardware defect that could not be resolved with troubleshooting procedures. Id. at ¶¶ 62-64.

6           Taking into account the discovery rule, the earliest the limitations period could have begun

7    to run as to Mr. Martinho was December 2009, and the latest was January 2010, upon discovering

8    that a third printer had the same alleged defect. Noting that three separate HP wireless printers

9    had the same alleged defect and that HP's customer support was unable to resolve the problem

10   constitutes sufficient inquiry notice that there was something wrong. These alleged facts coupled

11   with the comments posted on product-review websites further support the trigger of inquiry notice

12   as to Mr. Martinho. See Clemens, 534 F.3d at 1024-25. Therefore, collectively, these allegations

13   show that the latest Mr. Martinho could have discovered the existence of a CLRA claim is January

14   2010. Since this action was filed in August 2013 and the CLRA statute of limitations is three

15   years, Mr. Martinho's CLRA claim is also untimely.

16          In their opposition brief, Plaintiffs appear to argue that the limitations period should begin

17   to run when they discovered there was fraud and learned that HP was actively concealing the

18   alleged defect, not when they discovered that the HP wireless printer malfunctioned. Opp'n at 14.

19   This argument, however, is unpersuasive. First, under the discovery rule, the three-year

20   limitations period begins to run when Plaintiffs have inquiry notice of the CLRA claim and

21   suspects wrongdoing. Such inquiry notice is derived from Plaintiffs' possession of multiple HP

22   wireless printers with the same alleged defect, Plaintiffs repeatedly receiving the same

23   troubleshooting advice from HP customer support, and the various postings in product-review

24   websites regarding the problems encountered with the wireless function of the HP wireless

25   printers. As such, Plaintiffs are charged with presumptive knowledge of injury and, at that point,

26   the limitations period began to run. See Philips v. Ford Motor Co., No. 14-cv-02989-LHK, 2015

27   WL 4111448, at *8 (N.D. Cal. July 7, 2015) ("Only when the defect manifested in their

28
Case No.: 5:13-cv-03847-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

*United States District Court*
*Northern District of California*

1    vehicles . . . were California Plaintiffs charged with a duty to investigate and presumptive

2    knowledge of the defect.  The statute of limitations began to run at that point.") (internal

3    quotations omitted).  Second, even if the discovery rule delayed accrual of the limitations period

4    until Plaintiffs learned of the alleged fraud, Plaintiffs fail to allege when and how they learned HP

5    was committing fraud.  Instead, each Plaintiff offers an arbitrary date within the three-year statute

6    of limitations—August 20, 2010 and November 8, 2010—and merely allege they discovered the

7    problem was caused by a hardware defect that could not be resolved with troubleshooting

8    procedures.

9          In sum, Plaintiffs' CLRA claims are time-barred.  Plaintiffs have not remedied the

10   deficiencies addressed in this court's previous ruling.  Providing leave to further amend under

11   these circumstances would be futile.  As such, Plaintiffs' CLRA claims are dismissed with

12   prejudice.

13        **B.**     **Unfair Competition Law**

14             **i.**     **Timeliness of the Claim**

15        The UCL prohibits unfair competition that includes "any unlawful, unfair or fraudulent

16   business act or practice and unfair, deceptive, untrue or misleading advertising."  Cal. Bus. & Prof.

17   Code § 17200.  The statute of limitations for an unfair competition claim is "four years after the

18   cause of action accrued," and it can be tolled under the discovery rule.  Id. at § 17208; Aryeh, 55

19   Cal. 4th at 1195-96.

20        Only the timeliness of Mr. Ferranti's UCL claim is at issue.  See Mot. at 6.  Given the

21   discussion above regarding Mr. Ferranti's allegations, and construing the alleged facts in the light

22   most favorable to Mr. Ferranti, the latest the limitations period could have begun to run was

23   September 2009 when he realized that his second printer was allegedly defective.  See SAC at ¶

24   42.  This action was filed within the four-year statute of limitations, thus Mr. Ferranti has alleged

25   facts that render this claim timely.

26             **ii.**     **Sufficiency of the Pleadings**

27        The court will now determine whether Plaintiffs adequately pled their claims.  The UCL

28
Case No.: 5:13-cv-03847-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

United States District Court
Northern District of California

United States District Court
Northern District of California

1  "provides an equitable means through which both public prosecutors and private individuals can

2  bring suit to prevent unfair business practices and restore money or property to victims of these

3  practices." Yanting Zhang v. Super. Ct., 57 Cal. 4th 364, 370 (2013).  Written in the disjunctive,

4  the UCL "establishes three varieties of unfair competition—acts or practices which are unlawful,

5  or unfair, or fraudulent." Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co., 20 Cal. 4th 163, 180

6  (1999).  The "unlawful" prong of the UCL "borrows violations of other laws and treats them as

7  independently actionable." Daugherty v. Am. Honda Motor Co., Inc., 144 Cal. App. 4th 824, 837

8  (2006).  "The standard for determining what business acts or practices are 'unfair' in consumer

9  actions under the UCL is currently unsettled." Yanting Zhang, 57 Cal. 4th at 380 n.9.  Some

10  courts have held that the "unfair" prong requires alleging a practice that "offends an established

11  public policy or . . . is immoral, unethical, oppressive, unscrupulous or substantially injurious to

12  consumers," and the policy must be "tethered to specific constitutional, statutory or regulatory

13  provision." Bardin v. Daimlerchrysler Corp., 136 Cal. App. 4th 1255, 1263 (2006) (internal

14  citations omitted).  Other courts have held that the court must apply a balancing test that "weigh[s]

15  the utility of the defendant's conduct against the gravity of the harm to the alleged victim."

16  Schnall v. Hertz Corp., 78 Cal. App. 4th 1144, 1167 (2000).  Lastly, the "fraudulent" prong of the

17  UCL requires a showing that "members of the public are likely to be deceived." Id. at 838.

18       When the "UCL claim rests on allegations of fraud, it must satisfy Rule 9(b)." Block v.

19  eBay, Inc., 747 F.3d 1135, 1140 (9th Cir. 2014).  Thus, a plaintiff must allege with specificity that

20  purported misrepresentations: (1) were relied on by Plaintiff; (2) were material; (3) influenced

21  Plaintiff's decision to purchase eBay's product; and (4) were likely to deceive members of the

22  public. In re Apple In-App Purchase Litig., 855 F. Supp. 2d 1030, 1041 (N.D. Cal. 2012).

23       In their SAC, Plaintiffs allege that HP knew the wireless printers were defectively

24  designed and/or manufactured, but nonetheless marketed and sold the printers while failing to

25  disclose and actively conceal the defect. SAC at ¶ 89.  Based on these facts, Plaintiffs allege a

26  violation of the UCL under the unlawful, unfair, and fraudulent prongs. Id. at ¶ 94.  HP moves to

27  dismiss the UCL claim on three grounds: (1) Plaintiffs do not allege facts establishing that HP had

28
9

Case No.: 5:13-cv-03847-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

1    knowledge of the purported defect at the time of sale; (2) Plaintiffs fail to allege facts establishing

2    that HP had a duty to disclose any alleged defects; and (3) Mr. Ferranti has not participated in a

3    sales transaction which could give rise to a UCL claim.  Each argument will be addressed in turn.

a.    *Knowledge of the Purported Defect at the Time of Sale*

4

5            HP argues that Plaintiffs' allegations concerning customer postings on product-review

6    websites, and customers returning or exchanging the HP wireless printers, are not sufficient to

7    establish that HP knew of the purported defect at the time of sale.  Mot. at 11.  In opposition,

8    Plaintiffs argue that the Rule 9(b) heightened pleading standard does not require allegations

9    concerning HP's state of mind, thus it is not necessary to specifically plead HP's knowledge.

10   Opp'n at 11.  Moreover, Plaintiffs argue that their allegations raise an inference of HP's

11   knowledge because immediately after the printers went on sale, customers repeatedly complained

12   to HP's customer support about the printers' inability to establish a reliable wireless connection.

13   Id.  Additionally, Plaintiffs contend that an HP customer service representative told Mr. Ferranti

14   that the malfunction was caused by a hardware defect, which raises an inference that HP knew

15   about the defect.  Id. at 12.

16           In a UCL claim, the plaintiff must allege that the manufacturer knew of the purported

17   defect at the time of sale.  Wilson v. Hewlett-Packard Co., 668 F.3d 1136, 1145 (9th Cir. 2012).  A

18   successful pleading will contain allegations that include the specific defect and any tests or

19   information that could have alerted the manufacturer of the defect, such as consumer complaints

20   posted on the manufacturer's customer support website.  Id. at 1147.  To the extent a plaintiff

21   relies on consumer complaints posted on the website, the posts must be dated to indicate that the

22   manufacturer was aware of the defect at the time the product was sold to the plaintiff.  Id. at 1147-

23   48.  Consumer complaints alone, however, cannot adequately support an inference that the

24   manufacturer knew of the defect.  Id. at 1147.

25           Here, Plaintiffs allege that the HP OfficeJet Pro 8500 Wireless was released in March

26   2009.  SAC at ¶ 21.  Plaintiffs include verbatim language of customer complaints and reviews

27   posted on HP Support Forum, CNET, Amazon, and Consumer Reports dating from April 19, 2009

28

United States District Court
Northern District of California

10

Case No.: 5:13-cv-03847-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

United States District Court
Northern District of California

1   to March 24, 2011.  Id. at ¶¶ 24-29.  According to Plaintiffs, Mr. Ferranti received his first printer

2   as a warranty replacement on March 25, 2009, and received his second printer as an exchange on

3   September 27, 2009; Mr. Martinho purchased his first printer on December 22, 2009, and received

4   his second printer as an exchange on December 28, 2009.  Id. at ¶¶ 40, 42, 55-56.  Since Mr.

5   Ferranti obtained his first printer before the first consumer post of April 2009, it cannot be said

6   that HP knew of the defect at the time Mr. Ferranti obtained his printer.  As to Mr. Ferranti's

7   second printer and Mr. Martinho's two printers, only a few consumer posts alleged by Plaintiffs

8   were posted before they obtained their printers.  Under Wilson v. Hewlett-Packard, this is not

9   sufficient to impute HP with knowledge of the defect at the time of sale.

10          Plaintiffs also allege that the HP OfficeJet Pro 8600 Wireless was released in November

11  2011, and they include verbatim language of customer complaints and reviews posted on CNET

12  and Amazon.  Id. at ¶¶ 30-32.  These posts are dated between December 16, 2011 and June 18,

13  2013.  Id. at ¶¶ 31-32.  According to Plaintiffs, Mr. Martinho purchased his printer on January 19,

14  2010.  Id. at ¶ 58.  Since it is unclear how Mr. Martinho was able to purchase his printer 22

15  months before it was released and before the first consumer post, then it cannot be said that HP

16  knew of the defect at the time Mr. Martinho's purchased his printer.

17          Moreover, Plaintiffs allege that in a phone conversation between Mr. Ferranti and an HP

18  tech support agent, the agent admitted that the malfunctions were caused by a hardware defect on

19  the radio button's wireless functionality, and thus the defect would continue to be a problem and

20  would get worse.  Id. at ¶ 47.  While Plaintiffs do not allege when this phone conversation took

21  place, it is presumed that it occurred after Mr. Ferranti obtained his HP wireless printer.  Thus, this

22  is not sufficient to impute HP with knowledge of the defect at the time Mr. Ferranti obtained his

23  printer.  See Kowalsky v. Hewlett-Packard Co., 771 F. Supp. 2d 1156, 1162 (N.D. Cal. 2011)

24  (finding that HP cannot be held liable under the fraudulent prong because there were insufficient

25  allegations "to suggest that HP had knowledge of the basic fact at the time that it marketed, and

26  Plaintiff purchased, the printer"); Wilson, 668 F.3d at 1146-47 (noting that a successful pleading

27  includes allegations that there were consumer complaints concerning the defect months before the

28                                                11
    Case No.: 5:13-cv-03847-EJD
    ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

1   plaintiff purchased the product, indicating that the manufacturer was aware of the defect at the

2   time of sale).

3        Considering the allegations independently and collectively, they are not sufficient to

4   support an inference that HP knew of the purported defect at the time of sale.

5                    b.   *Duty to Disclose Alleged Defect*

6        HP argues that Plaintiffs failed to allege facts establishing that HP had a duty to disclose

7   any purported defect since there are no allegations demonstrating that the wireless connectivity

8   issues were contrary to any representations made by HP or that they posed any threat to Plaintiffs'

9   safety.  Mot. at 12-13.  In opposition, Plaintiffs argue that HP's duty to disclose arises from their

10  exclusive knowledge of the defect, a material fact that was not known to Plaintiffs.  Opp'n at 9.

11  Plaintiffs argue that while the customer posts informed Plaintiffs the wireless function was

12  problematic, only HP knew that the problem could not be fixed and would only get worse despite

13  customers' attempt to fix the problem.  Id. at 10.

14       "California courts have generally rejected a broad obligation to disclose," and have found

15  that "a manufacturer's duty to consumers is limited to its warranty obligations absent either an

16  affirmative misrepresentation or a safety issue."  Wilson, 668 F.3d at 1141.  To the extent

17  Plaintiffs contend that HP's exclusive knowledge of the defect was a material fact, "for the

18  omission to be material, the failure must still pose safety concerns."  Id. at 1142.

19       Here, Plaintiffs allege that HP had exclusive knowledge of the defect, it made partial

20  disclosures about the quality of the printers without revealing the defective nature of the printers, it

21  actively concealed the defective nature of the printers, and it knew that Plaintiffs could not

22  reasonably have expected to learn about or discover the defect.  SAC at ¶ 91.  These allegations,

23  however, are insufficient to impose a duty of disclosure upon HP.  Plaintiffs learned of the

24  purported defect shortly after obtaining the printers, and realized that the problem could not be

25  resolved even after going through the troubleshooting procedures.  Since Plaintiffs knew of the

26  defect, it cannot be said that HP had exclusive knowledge of the defect.  While Plaintiffs may not

27  have known that the source of the defect was a hardware issue, they nonetheless knew that the HP

28

United States District Court
Northern District of California

12
Case No.: 5:13-cv-03847-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

1    wireless printers had a defect that could not be fixed.  Moreover, the purported defect does not

2    pose a safety concern to consumers, and Plaintiffs do not allege as such.  Therefore, HP did not

3    have a duty to disclose.

c.  *Mr. Ferranti's Participation in a Sales Transaction*

5         Lastly, HP argues that Mr. Ferranti has not participated in a sales transaction giving rise to

6    a UCL claim since he received his first printer as a warranty replacement.  Mot. at 14.  HP argues

7    that, consequently, Mr. Ferranti fails to allege he has lost money as a result of the sales

8    transaction, and that there was a particular promise attached to the sale of the printer.  Id.

9    Plaintiffs do not offer an argument in response, other than to state in a footnote that Mr. Ferranti's

10   original printer was his legal property, which he exchanged for the purportedly defective printer,

11   thus the acquisition of the purportedly defective printer was a "sale."  Opp'n at 6 n.1.

12        Since Plaintiffs fail to make a legal argument in support of their position, this court

13   presumes that Plaintiffs concede this point.  To the extent Plaintiffs' footnote was meant to dispute

14   this argument, it is unsuccessful as Plaintiffs do not plead the original printer was the product of a

15   sales transaction.  Under California Business and Professions Code § 17204, a "person who has

16   suffered injury in fact and has lost money or property as a result of the unfair competition" can

17   pursue an action for relief.  There are several ways in which economic injury from unfair

18   competition may be shown:

19

20            A plaintiff may (1) surrender in a transaction more, or acquire in a
              transaction less, than he or she otherwise would have; (2) have a
              present or future property interest diminished; (3) be deprived of
21            money or property to which he or she has a cognizable claim; or (4)
              be required to enter into a transaction, costing money or property,
22            that would otherwise have been unnecessary.

23   Kwikset Corp. v. Super. Ct., 51 Cal. 4th 310, 323 (2011).

24        Here, Plaintiffs allege that Mr. Ferranti's first HP wireless printer was a warranty

25   replacement for a different HP printer.  SAC at ¶ 40.  However, Plaintiffs provide no details

26   concerning the original HP wireless printer.  As such, Plaintiffs fail to plead that Mr. Ferranti has,

27   in some way, lost money or property as a result of HP's alleged unfair competition.

28
                                           13
     Case No.: 5:13-cv-03847-EJD
     ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

United States District Court
Northern District of California

1    In sum, Plaintiffs have not sufficiently pled a UCL claim.  Plaintiffs have not provided

2    sufficient allegations demonstrating that HP had knowledge of the defect at the time Plaintiffs

3    obtained their HP wireless printers, that HP had a duty to disclose the alleged defect, or that Mr.

4    Ferranti participated in a sales transaction.  Accordingly, HP's motion to dismiss Plaintiffs' UCL

5    claim is granted.[2]

6    ### C.    Breach of Express Warranty

7    #### i.    Timeliness of the Claim

8    The statute of limitations for a breach-of-express-warranty claim is "four years after the

9    cause of action has accrued."  Cal. Com. Code § 2725(1); see Cardinal Health 301, Inc. v. Tyco

10   Elec. Corp., 169 Cal. App. 4th 116, 134-35 (2008) (noting that the statute of limitations for a

11   breach-of-express-warranty claim is governed by § 2725, which provides the statute of limitations

12   for a breach of contract for sale).  Here, only the timeliness of Mr. Ferranti's breach-of-express-

13   warranty claim is at issue.  See Mot. at 6.  Given the discussion above regarding a four-year statute

14   of limitations, Mr. Ferranti has alleged a timely claim.

15   #### ii.    Sufficiency of the Pleadings

16   HP moves to dismiss this claim on the basis that a breach of warranty is insufficiently pled.

17   Mot. at 16.  In response, Plaintiffs argue that HP breached its warranty when it failed to repair the

18   HP wireless printers and knew that the software patches it offered would not repair the printers.

19   Opp'n at 5.  Plaintiffs further ague that HP failed to replace the printers or refund the purchase

20   price, and even if HP had replaced the printers, the replacement would not have remedied the

21   alleged defect because all HP wireless printers had the same defective wireless transceiver.  Id. at

22   5-6.

23   "A warranty is a contractual promise from the seller that the goods conform to the

24   promise."  Daugherty, 144 Cal. App. 4th at 830.  "If they do not, the buyer is entitled to recover

25   the difference between the value of the goods accepted by the buyer and the value of the goods

26

27   [2] To the extent certain prongs of the UCL claim are attached to the time-barred CLRA claim, such
     as the "unlawful" prong, those must be dismissed with prejudice.

28

United States District Court
Northern District of California

1  had they been as warranted." Id.

2       Here, the warranty at issue provides HP wireless printers with a one-year limited warranty.

3  See Exh. A, Decl. of Aaron H. Bloom ("Bloom Decl."), Dkt. No. 45-1 at 3.[3]  It "warrants to the

4  end-user customer that [HP printers] be free from defects in materials and workmanship for [one

5  year], which duration begins on the date of purchase by the customer." Id.  The warranty "covers

6  only those defects that arise as a result of normal use of the product . . . ." Id.  The warranty also

7  provides:

8            5.  If HP receives, during the applicable warranty period, notice of a
             defect in any product which is covered by HP's warranty, HP shall

9            either repair or replace the product, at HP's option.

10           6.  If HP is unable to repair or replace, as applicable, a defective
             product which is covered by HP's warranty, HP shall, within a

11           reasonable time after being notified of the defect, refund the
             purchase price for the product.

12

13           7.  HP shall have no obligation to repair, replace, or refund until the
             customer returns the defective product to HP.

14 Id.

15      Plaintiffs allege that Mr. Ferranti obtained his first HP wireless printer as a warranty

16 replacement, and obtained his second as a product exchange at a retail store; they also allege that

17 Mr. Martinho purchased his first HP wireless printer, exchanged the printer at a retail store, and

18 purchased another HP wireless printer.  SAC at ¶¶ 40, 42, 56, 58.  Plaintiffs allege that when each

19 of their printers failed to maintain a wireless connection, they called HP's customer support and

20 performed the suggested troubleshooting procedures even though HP knew it would not fix the

21 wireless defect.  Id. at ¶¶ 41-42, 57-58.  During one of these phone calls to HP, Mr. Ferranti was

22 allegedly offered a discount off a new printer, but was not offered a full refund.  Id. at ¶ 47.

23 Plaintiffs allege that on multiple occasions, they each requested that HP either refund the purchase

24 price or replace the printer with a functioning wireless transceiver.  Id. at ¶¶ 48, 65.

25

26 ———————————————
   [3] A copy of HP's limited warranty was provided by HP's counsel as an exhibit.  While Plaintiffs
27 did not provide a copy of the warranty with their complaint, it appears that Plaintiffs do not
   dispute that the warranty provided by HP is correct.  See Opp'n at 6 (referencing the exhibit).

28
   Case No.: 5:13-cv-03847-EJD
   ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

1    Plaintiffs have not sufficiently pled a claim for breach of warranty.  While Plaintiffs allege

2    that HP's attempt to repair the printers through troubleshooting was ineffective, they also allege

3    that they were able to exchange their printers and at least Mr. Ferranti was offered a discount off a

4    new printer.  Plaintiffs' general allegations that they requested a refund or replacement is too

5    conclusory as there are no factual allegations of when this occurred or that their requests were

6    denied.  See Love, 915 F.2d at 1245 (noting that courts "are not bound to accept as true a legal

7    conclusion couched as a factual allegation").  Because Plaintiffs fail to clearly allege how HP

8    breached its one-year warranty, HP's motion to dismiss this claim is granted.

9    **D.    Magnuson-Moss Warranty Act**

10    **i.    Timeliness of the Claim**

11    The MMWA allows "a consumer who is damaged by the failure of a supplier, warrantor,

12    or service contractor to comply with any obligation under this chapter . . . [to] bring suit for

13    damages and other legal and equitable relief."  Rooney v. Sierra Pac. Windows, 566 Fed. Appx.

14    573, 576 (9th Cir. 2014) (quoting 15 U.S.C. § 2310(d)(1)).  Since the MMWA does not contain a

15    statute of limitations, the court will look to the most analogous state statute of limitations.  Chuck

16    v. Hewlett Packard Co., 455 F.3d 1026, 1031 (9th Cir. 2006).  As such, the most analogous state

17    statute of limitations is that governing the breach-of-warranty claim under California Commercial

18    Code § 2725, which is four years.

19    Here, only the timeliness of Mr. Ferranti's MMWA claim is at issue.  See Mot. at 6.  The

20    analysis above regarding Mr. Ferranti's breach-of-express-warranty claim applies here, thus the

21    MMWA claim will not be dismissed as untimely.

22    **ii.    Sufficiency of the Pleadings**

23    The MMWA "provides a federal private cause of action for a warrantor's failure to comply

24    with the terms of a written warranty."  Milicevic v. Fletcher Jones Imp., Ltd., 402 F.3d 912, 917

25    (9th Cir. 2005).  Since the MMWA requires a breach of warranty under state law, the MMWA

26    claim can properly be dismissed if the plaintiff fails to state a claim for breach of an express or

27    implied warranty.  Troup v. Toyota Motor Corp., 545 Fed. Appx. 668, 669 (9th Cir. 2013).

28

United States District Court
Northern District of California

16
Case No.: 5:13-cv-03847-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

1       In this instance, the court found above that Plaintiffs failed to sufficiently plead a claim for

2   breach of express warranty.  Thus, it follows that Plaintiffs have failed to plead a MMWA claim.

3   HP's motion to dismiss this claim is granted.

4           **E.      Plaintiffs' Alternatively Pleaded Arizona and New York Law Claims**

5       In the alternative, Mr. Ferranti asserts a violation of the Arizona Consumer Fraud Act,

6   A.R.S. § 44-1522, on behalf of class members who purchased or leased HP wireless printers in

7   Arizona (the "Arizona Subclass"); and Mr. Martinho asserts a violation of the New York General

8   Business Law § 349, on behalf of class members who purchased or leased HP wireless printers in

9   New York (the "New York Subclass").  Both of these statutes are consumer protection statutes.

10      HP moves to dismiss the Arizona law claim on the basis that it is time-barred, and

11  Plaintiffs failed to plead any facts demonstrating HP's duty to disclose and knowledge of the

12  alleged defect at the time of sale.  Mot. at 18-19.  HP also moves to dismiss the New York law

13  claim on the basis that it is time-barred, and Plaintiffs failed to sufficiently plead both that HP

14  made a representation which contradicted the omission, and that HP had knowledge of the

15  wireless transceiver defect at the time of sale.  Id.  In opposition, Plaintiffs appear to offer the

16  same arguments as with the California consumer fraud claims.  Opp'n at 15 n.4; see supra § III(A),

17  (B).

18      This court finds that Plaintiffs' alternatively pleaded Arizona and New York law claims are

19  time-barred.  Under Arizona law, the statute of limitations for a consumer fraud claim under

20  A.R.S. § 44-1522 is one year.  Alaface v. Nat'l Inv. Co., 181 Ariz. 586, 591 (1994).  As stated

21  above, the latest Mr. Ferranti's statute of limitations could have begun to run was September 2009.

22  Since this action was filed in August 2013, Mr. Ferranti's Arizona law claim is untimely.

23  Similarly, under New York law, the statute of limitations for an unlawful practice claim under

24  New York General Business Law § 349 is three years.  Statler v. Dell, Inc., 775 F. Supp. 2d 474,

25  484 (E.D.N.Y. 2011).  As stated above, the latest Mr. Martinho's statute of limitations could have

26  begun to run was January 2010.  Since this action was filed after the expiration of the limitations

27  period, Mr. Martinho's New York law claim is also untimely.  Accordingly, Plaintiffs'

28

United States District Court
Northern District of California

1  alternatively pleaded Arizona and New York law claims are dismissed with prejudice.

2  **IV.    CONCLUSION**

3         Based on the foregoing, HP's Motion to Dismiss is GRANTED.  Plaintiffs' CLRA claim,

4  Arizona law claim, and New York law claim are dismissed without leave to amend.  Plaintiffs'

5  remaining claims are dismissed with leave to amend, and can file their third amended complaint

6  addressing the deficiencies stated herein no later than 15 days from the date of this order.

7

8         **IT IS SO ORDERED.**

9  Dated: September 10, 2015

10 

11 EDWARD J. DAVILA
   United States District Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

18
Case No.: 5:13-cv-03847-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS